UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ROBERT P. "SKIP" CUMMINS, | § § § | |
| Plaintiff, | § § | Case No. 07 CV 4633 (JGK) |
| vs. | § § § | |
| SUNTRUST CAPITAL MARKETS, INC., AMIT HAZAN, and JONATHAN BLOCK, | § § § § | JURY DEMAND |
| Defendants. | § § | |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56, Defendants SunTrust Capital

Markets, Inc., Amit Hazan, and Jonathan Block (hereinafter "SunTrust") respectfully

move this Court for Summary Judgment on all claims of Plaintiff Robert P. Cummins

("Cummins"), and ask that this Court dismiss Cummins' Complaint, with prejudice, in its

entirety.

As set forth more fully in the Affidavits attached to this Motion, SunTrust's

Memorandum of Law in Support of the Motion for Summary Judgment (the

"Memorandum") and Statement of Material Facts, SunTrust demonstrates that the

allegedly defamatory statements at issue in this case: (1) were largely not "of and

concerning" Cummins; (2) were true; (3) were protected statements of opinion; (4) were

non-defamatory; (5) were not made with any degree of fault by SunTrust; and (6) caused

no damage to Cummins. Accordingly, Cummins cannot raise genuine issues of material

fact concerning his claims, and thus SunTrust is entitled to judgment as a matter of law.

For these reasons, and for those set forth in the accompanying Affidavits, Memorandum,

and Statement of Material Facts, SunTrust respectfully requests that this Court grant

SunTrust's Motion for Summary Judgment.

      Respectfully submitted this 10th day of September, 2008.


/s/ Judson Graves

JUDSON GRAVES
Georgia Bar No. 305700
ROBERT R. LONG
Georgia Bar No. 141546
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
Phone: (404) 881-7000
Fax: (404) 881-7777

-and-

NELSON BOXER (NB2762)
ALSTON & BIRD LLP
90 Park Avenue
New York, NY 10016
Phone: (212) 210-9400
Fax: (212) 210-9444

*Counsel for Defendants*

LEGAL02/30937416v1

# Affidavit of Amit Hazan

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ROBERT P. "SKIP" CUMMINS, | § § § | |
| Plaintiff, | § § | |
| vs. | § § § | Case No. 07 CV 4633 (JGK) |
| SUNTRUST CAPITAL MARKETS, INC., AMIT HAZAN, and JONATHAN BLOCK, | § § § § § | JURY DEMAND |
| Defendants. | | |

### DEFENDANT AMIT HAZAN'S SWORN AFFIDAVIT IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Personally appeared before the undersigned, duly authorized to administer oaths in this State, Mr. Amit Hazan, who being first duly sworn, states as follows:

1.     I, Amit Hazan, am a resident of the State of New York, am over eighteen (18) years of age, and am competent to give this Affidavit. The facts set forth herein are true and correct and are based upon my personal knowledge.

2.     At all times in the above-captioned lawsuit, I was an equity research analyst at SunTrust Capital Markets, Inc. ("SunTrust"). I am currently an equity research analyst at Oppenheimer & Company, Inc.. While at SunTrust, I regularly wrote and published analyst reports, called "Notes," on the various companies I followed as part of my regular job duties. My Notes were my opinion on how a company was performing, how its stock might perform in the future, and the possible effect of various market forces and other issues or problems which might affect those companies, their management and their stock price. I based my opinions on, among other things, review of public information about

the company, a subjective assessment of the attributes and abilities of the particular management teams, and "chatter" among investors and other analysts.

3.      I was the lead author on two SunTrust analyst notes of June 8 and June 12, 2006 (the "Notes") and made statements in the newspaper articles regarding those Notes.  The Notes and certain statements I made that were published in newspaper articles are the source of the alleged defamatory statements at issue in the above captioned matter (hereinafter the "SunTrust Statements").

4.      In May of 2006, I was asked by my superior at SunTrust, Rick Inskeep, to investigate the companies that I covered for any possible option grant problems or irregularities that might be controversial or attract regulatory attention, since that issue had become very important to investors, regulators, enforcement authorities and the general public in mid-2006.

5.      Pursuant to Inskeep's request, Jonathan Block and I investigated the companies we covered, with the investigative research done primarily by Jonathan Block, with my input.  The results of our investigation were benign for most companies.  However, we uncovered suspicious activity at Cyberonics, Inc., most notably regarding options dated June 15, 2004.  Those options came to be the subject matter of the June 8 and June 12 Notes, which are the source for the SunTrust Statements.

6.      Prior to this investigation I was already aware of concerns that had been expressed by others in the investment community regarding the questionable Cyberonics June 15, 2004 option grants.

7.      Jonathan Block's and my investigation revealed that on June 14, 2004, Cyberonics' stock price at the close of trading was $19.58.

- 2 -

8.     Jonathan Block's and my investigation revealed that on June 15, 2004, trading of Cyberonics stock was halted for the entire day during a Food and Drug Administration ("FDA") panel proceeding concerning VNS therapy for depression.  The panel gave a positive recommendation for the therapy at approximately 4 p.m. EDT.

9.     Jonathan Block's and my investigation revealed that, according to Cyberonics public filings and my discussions with Pam Westbrook of Cyberonics, on the evening of June 15, 2004, immediately following the FDA panel decision, 250,000 stock options were issued by Cyberonics.

10.     Jonathan Block's and my investigation revealed that, according to Cyberonics public filings, all of the Cyberonics options issued on June 15, 2004 carried the June 14, 2004 closing price of $19.58.

11.     Jonathan Block's and my investigation revealed that, on June 16, 2004, which was the first day of public trading following the positive FDA panel recommendation, Cyberonics' share price jumped 78% to close at $34.81, yielding an overnight paper profit of around $2.3 million for Robert P. Cummins ("Cummins") and around $150,000 each for his fellow management team members - Richard Rudolph and Alan Totah.

12.     Jonathan Block's and my investigation revealed that, according to Cyberonics public filings, in February of 2005, Cummins sold approximately 350,000 options at around $40-45 per share.  Jonathan Block's and my investigation also revealed that these stock sales began just days after Cyberonics received further favorable news from the FDA, namely that the FDA had approved the VNS device for depression.

13.     At the time I drafted these Notes, I was aware that Cummins was widely reported to have sold millions of dollars of shares in February of 2005, just after the release of

- 3 -

good news that doubled the market value of Cyberonics stock. I was also aware that investors raised questions about the appropriateness of these stock sales, and I had also questioned Cummins and Cyberonics about the issue.

14.     Jonathan Block's and my investigation revealed that, according to Cyberonics public filings, Richard Rudolph and Alan Totah, employees of Cyberonics who were given options with a grant date of June 15, 2004 following the FDA panel decision, subsequently sold options at around $36 per share since that time.

15.     Jonathan Block's and my investigation revealed that for the Cyberonics quarter that ended on July 2004, there were 481,000 stock options granted, but only 304,000 of the options were publicly disclosed.

16.     Prior to publication of the June 8 and June 12 Notes that are the source of the SunTrust Statements, I consulted with David Prince, the then-General Counsel and chief lawyer for SunTrust Capital Markets, Inc. whom I understood to be a securities lawyer and well-versed in securities matters, and told him all of the facts regarding the June 15, 2004 option grants that are laid out in June 8 and June 12 Notes.

17.     Prince, after hearing and reading all of the facts as they were set out in the June 8 and June 12 Notes, told me prior to their publication that he agreed that the option grants were improper, might invite SEC scrutiny, and could be a regulatory violation.

18.     Prince also told me (1) that he had consulted with outside counsel, a securities law specialist, for a second opinion regarding the June 15, 2004 option grants, (2) that he told that securities law specialist all of the relevant facts regarding the grants, and (3) that the securities law specialist agreed with Prince that the June 15, 2004 option grants were

- 4 -

improper. All of this information was conveyed to me prior to publication of any of the SunTrust Statements.

19.     Susan Venezia is and was a supervisory analyst at SunTrust who was responsible for reviewing analyst Notes prior to their publication to ensure their accuracy and compliance with internal guidelines. Venezia reviewed the SunTrust June 8 and June 12 Notes and approved them without qualification.

20.     Rick Inskeep was the Director of Research at SunTrust at the time of the publication of the June 8 and June 12 Notes. He specifically approved the June 8 Note's downgrade of Cyberonics stock from "buy" to "neutral." I sought his input on a substantial portion of the June 12 Note prior to its publication. He cleared the portions of the June 12 Note that I sent to him.

21.     In preparing the SunTrust Statements, I took great care to insure that all of the facts we were reporting were accurate, that the opinions I was expressing were thoughtful and carefully considered, and that everything we were saying was true. I did not know that any of the SunTrust Statements were false; I did not act with reckless disregard as to whether any of the SunTrust Statements were false or not; and I did not have any degree of awareness whatsoever that any of the content of the SunTrust Statements was false, or probably false. To the contrary, I thought and believed they were entirely true. I did not entertain any doubt, and certainly no serious doubt, about the truth of the SunTrust Statements, and I took all steps I felt to be reasonable and appropriate to confirm the truth and accuracy of what we said in the SunTrust Statements before they were published. All of my actions in conferring with Mr. Block, consulting in advance with David Prince, obtaining Ms. Venezia's approval of the Notes, consulting with Rick Inskeep, and

contacting Pam Westbrook of Cyberonics in advance of the publication of the June 8 Note, were calculated to insure that the SunTrust Statements were true and accurate.

22.     I went to great lengths to ensure the accuracy and appropriateness of the SunTrust Statements by having the June 8 and June 12 Notes reviewed in part by Prince, Prince's securities law expert, and Rick Inskeep, and in their totality by Susan Venezia, as well as by editing my own work and by having Jonathan Block review my work.

23.     I believed at the time of publishing the SunTrust Statements that Cyberonics had a promising technology and future.  However, I also believed, as did many others, that Cummins' volatile temperament, tendency to exaggerate Cyberonics' future projections, and questionable stock transactions damaged the credibility of both Cummins and Cyberonics, which subsequently damaged the value of the company's stock price.

24.     I had no malice, ill will or spite towards Cummins prior to or concurrent with the publication of the SunTrust Statements, and none of the SunTrust Statements were made with any other motivation than a desire to inform investors and potential investors of our opinion on potential future performance of Cyberonics stock.

25.     My career as an equities research analyst depends on people believing that I offer unbiased, reasonable, and thoughtful advice on the companies I cover.  Such a belief, and nothing else, motivated me to make and publish the SunTrust Statements.

26.     I did not, and have never, issued any statements or Notes, including the June 8 and June 12 Notes that were the source of the SunTrust Statements, that were written with the intent to help investors who "short" stocks (i.e., make money on stocks when the stock price of the company goes down).  I have also never violated any disclosure rules or guidelines with respect to the matters at issue in the SunTrust Statements.

27.     I am not and have never been a Certified Public Accountant (CPA).

28.     I intended the term "paper profit" in the SunTrust Statements to be understood as it is routinely defined:   as an "unrealized gain" in a stock (i.e., a "profit that has not yet been realized because the security is still held.")

29.     I intended the term "management" in the SunTrust Statements generally to refer to the board of directors of a company.

30.     I intended the SunTrust Statements to be pure opinion and did not intend them to have any defamatory meaning towards anyone.

**FURTHER AFFIANT SAYETH NOT.**

_____
Amit Hazan

LEGAL02/52028132v2

Sworn to and subscribed before me
This <u>3</u> day of September, 2008.

*Israel M Guerrero*

Notary Public

My Commission Expires:

```
"OFFICIAL SEAL"
ISRAEL M. GUERRERO
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 4/6/2009
```

- 8 -

# Affidavit of Jonathan Block

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ROBERT P. "SKIP" CUMMINS, | § § § | |
| Plaintiff, | § § | Case No. 07 CV 4633 (JGK) |
| vs. | § § | |
| SUNTRUST CAPITAL MARKETS, INC., AMIT HAZAN, and JONATHAN BLOCK, | § § § § | JURY DEMAND |
| Defendants. | § | |

## DEFENDANT JONATHAN BLOCK'S SWORN AFFIDAVIT IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Personally appeared before the undersigned, duly authorized to administer oaths in this State, Mr. Jonathan Block, who being first duly sworn, states as follows:

1.      I, Jonathan Block, am a resident of the State of New York, am over eighteen (18) years of age, and am competent to give this Affidavit. The facts set forth herein are true and correct and are based upon my personal knowledge.

2.      At all times relevant to the above-captioned lawsuit, I was an associate equities research analyst at SunTrust Capital Markets, Inc. (hereinafter "SunTrust"). I am currently an equities research analyst at SunTrust. During the relevant time, I assisted in research for analyst reports, or "Notes," on various companies we were covering as part of my job duties.

3.      I did not make the alleged defamatory statements at issue in the above-captioned matter (hereinafter the "SunTrust Statements"), including those of the June 8, 2006 and June 12, 2006 SunTrust analyst reports on Cyberonics (hereinafter the "June 8 Note" and the "June 12 Note"). Instead, I provided research on the facts underlying Amit Hazan's

opinions in the June 8 and June 12 Notes. I did, however, review and edit the June 8 and
June 12 Notes prior to their publication, and my name is on the Notes.

4.    The research I conducted in preparation for the SunTrust Statements was
primarily a review of public documents regarding Cyberonics, including documents
Cyberonics filed with the Securities & Exchange Commission ("SEC"). For example, I
reviewed all Cyberonics Form 4s filed during the relevant time period. Form 4s are
documents filed with the SEC by public companies such as Cyberonics that reflect stock
transactions for certain high-level members of management.

5.    Many of the documents I looked at were online, and thus I did not keep copies of
those documents. I am not required by any rule or SunTrust guideline to keep copies of
information that I obtain from publicly-available sources in researching companies that
we cover.

6.    In May of 2006, Mr. Hazan and I were asked by my superior at SunTrust, Rick
Inskeep, to investigate the companies that Mr. Hazan and I covered for any possible
option grant problems or irregularities that might be controversial or attract regulatory
attention, since that issue had become very important to investors, regulators,
enforcement authorities and the general public in mid-2006.

7.    Pursuant to Mr. Inskeep's request, Mr. Hazan and I investigated the companies
we covered, with the investigative research primarily done by me, with Mr. Hazan's
input. The results of our investigation were benign for most companies. However, we
uncovered suspicious activity at Cyberonics, Inc., most notably regarding options dated
June 15, 2004. Those options came to be the subject matter of the June 8 and June 12
Notes, which are the source for the SunTrust Statements.

LEGAL02/30936281v2

8.    Mr. Hazan's and my investigation revealed that on June 14, 2004, Cyberonics' stock price at the close of trading was $19.58.

9.    Mr. Hazan's and my investigation revealed that on June 15, 2004, trading of Cyberonics stock was halted for the entire day during a Food and Drug Administration ("FDA") panel proceeding concerning VNS therapy for depression. The panel gave a positive recommendation for the therapy at approximately 4 p.m. EDT.

10.    Mr. Hazan's and my investigation revealed that on the evening of June 15, 2004, immediately following the FDA panel decision, 250,000 stock options were issued by Cyberonics.

11.    Mr. Hazan's and my investigation revealed that, according to Cyberonics public filings, all of the Cyberonics options issued on June 15, 2004 carried the June 14, 2004 closing price of $19.58.

12.    Mr. Hazan's and my investigation revealed that, on June 16, 2004, which was the first day of public trading following the positive FDA panel recommendation, Cyberonics' share price jumped 78% to close at $34.81, yielding an overnight paper profit of approximately $2.3 million for Robert P. Cummins ("Cummins") and approximately $150,000 each for his fellow management team members - Richard Rudolph and Alan Totah.

13.    Mr. Hazan's and my investigation revealed that, according to Cyberonics public filings, in February of 2005, Cummins sold approximately 350,000 options at around $40-45 per share. Mr. Hazan's and my investigation also revealed that these stock sales began just days after Cyberonics received further favorable news from the FDA, namely that the FDA had approved the VNS device for depression.

- 3 -

14.    Mr. Hazan's and my investigation revealed that, according to Cyberonics public filings, Richard Rudolph and Alan Totah, employees of Cyberonics who were given options with a grant date of June 15, 2004 following the FDA panel decision, subsequently sold options at around $36 per share since that time.

15.    Mr. Hazan's and my investigation revealed that for the Cyberonics quarter that ended on July 2004, there were 481,000 stock options granted, but only 304,000 of the options were publicly disclosed.

16.    Prior to publication of the June 8 and June 12 Notes that are the source of the SunTrust Statements, I consulted with David Prince, the then-General Counsel and chief lawyer for SunTrust Capital Markets, Inc. whom I understood to be a securities lawyer and well-versed in securities matters, and told him all of the facts regarding the June 15, 2004 option grants that are laid out in June 8 and June 12 Notes.

17.    Prince, after hearing and reading all of the facts as they were set out in the June 8 and June 12 Notes, told me prior to their publication that he agreed that the option grants were improper, might invite SEC scrutiny, and could be a regulatory violation.

18.    Prince also told me (1) that he had consulted with outside counsel, a securities law specialist, for a second opinion regarding the June 15, 2004 option grants, (2) that he told that securities law specialist all of the relevant facts regarding the grants, and (3) that the securities law specialist agreed with Prince that the June 15, 2004 option grants were improper.  All of this information was conveyed to me prior to publication of any of the SunTrust Statements.

19.    Susan Venezia is and was a supervisory analyst at SunTrust who was responsible for reviewing analyst Notes prior to their publication to ensure their accuracy and

- 4 -

compliance with internal guidelines. Ms. Venezia reviewed the SunTrust June 8 and

June 12 Notes and approved them without qualification.

20.    In assisting with the SunTrust Statements, I took great care to ensure that all of

the facts we were reporting were accurate, that the opinions expressed in the SunTrust

Statements were thoughtful and carefully considered, and that everything we were saying

was true. I did not know that any of the SunTrust Statements were false; I did not act

with reckless disregard as to whether any of the SunTrust Statements were false or not;

and I did not have any degree of awareness whatsoever that any of the content of the

SunTrust Statements was false, or probably false. To the contrary, I thought and believed

there were entirely true. I did not entertain any doubt, and certainly no serious doubt,

about the truth of the SunTrust Statements, and I took all steps I felt to be reasonable and

appropriate to confirm the truth and accuracy of what we said in the SunTrust Statements

before they were published. All of my actions in conferring with Mr. Hazan, consulting

in advance with David Prince, obtaining Ms. Venezia's approval of the Notes, consulting

with Rick Inskeep, and contacting Pam Westbrook of Cyberonics in advance of the

publication of the June 8 Note, were calculated to ensure that the SunTrust Statements

were true and accurate.

21.    I went to great lengths to ensure the accuracy and appropriateness of the SunTrust

Statements by having them reviewed by Prince, Prince's securities law expert, and Susan

Venezia, as well as by editing Amit Hazan's work and by having Amit Hazan guide me

on ensuring the accuracy of the June 8 and June 12 Note.

22.    I had no malice, ill will or spite towards Cummins prior to or concurrent with the

publication of the SunTrust Statements, and none of the SunTrust Statements were made

LEGAL02/30936281v2

with any other motivation than a desire to inform investors and potential investors of our opinion on potential future performance of Cyberonics stock.

23.     My career as an equities research analyst depends on people believing that I offer unbiased, reasonable, and thoughtful advice on the companies I cover.  Such a belief, and nothing else, motivated me to make and publish the SunTrust Statements.

24.     I did not, and have never, issued any statements or Notes, including the June 8 and June 12 Notes that were the source of the SunTrust Statements, that were written with the intent to help investors who "short" stocks (i.e., make money on stocks when the stock price of the company goes down).  I have also never violated any disclosure rules or guidelines with respect to the matters at issue in the SunTrust Statements.

25.     I am not and have never been a Certified Public Accountant (CPA).

**FURTHER AFFIANT SAYETH NOT**.

Jonathan Block

LEGAL02/30936281v2

Sworn to and subscribed before me
This _4th_ day of September, 2008.

_____
Notary Public

My Commission Expires:

CARMEN E RODRIGUEZ
NOTARY PUBLIC-STATE OF NEW YORK
No. 01RO6188018
Qualified in Bronx County
My Commission Expires June 02, 2012

- 7 -

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT P. "SKIP" CUMMINS, § § § | |
| Plaintiff, § § | Case No. 07 CV 4633 (JGK) |
| vs. § § | |
| SUNTRUST CAPITAL MARKETS, § INC., AMIT HAZAN, and § JONATHAN BLOCK, § § | JURY DEMAND |
| Defendants. § | |

## CERTIFICATE OF SERVICE

I hereby certify that on this day an unredacted copy of **DEFENDANTS'**

**MOTION FOR SUMMARY JUDGMENT, BRIEF AND MEMORANDUM OF**

**LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY**

**JUDGMENT, AND DEFENDANTS' STATEMENT OF MATERIAL FACTS** have

been served upon the following counsel of record via e-mail and via UPS overnight

delivery addressed as follows:

Julius Glickman
Ashton Bachynsky
GLICKMAN & HUGHES, LLP
909 Fannin Street, Suite 3800
Houston, TX 77010

Alan Heblack
SNITOW KANFER HOLTZER & MILLUS, LLP
575 Lexington Avenue
New York, NY 10022-6102

This 10th day of September, 2008.

/s/ Judson Graves

JUDSON GRAVES
Georgia Bar No. 305700

ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA, 30309-3424
Tel: (404) 881-7000
Fax: (404) 881-7777

LEGAL02/30940501v1